# EXHIBIT A

Case 8:10-cv-00112-DOC -MLG Document 47-1 Filed 03/28/11 Page 2 of 15 Page ID #:741

Deposition of Karen Sheeley                                DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD DE STEFAN, INDIVIDUALLY, AND ON BEHALF OF OTHER MEMBERS OF THE PUBLIC SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> vs. <br><br> FRITO-LAY, INC., ROLLING FRITO-LAY SALES, LP, AND DOES 1-10, INCLUSIVE, <br><br> Defendants. | No. SA CV10-0112-DOC(MLGx) |

DEPOSITION OF KAREN SHEELEY

March 2, 2011

Reported by: Nichole R. Miller, CSR No. 11712, RPR

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 3 of 15   Page ID #:742

Deposition of Karen Sheeley | DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1  A. No.

2  Q. You indicated that one of your responsibilities
3  was training the selling expense managers and business
4  managers on base and commission systems as it applies to
5  California route salespersons, correct?

6  A. Inclusive of California, yes.

7  Q. So to your knowledge, does Rolling Frito-Lay
8  Sales employ California route salespeople.

9  A. Yes.

10 Q. To your knowledge, does any other Frito-Lay
11 entity employ route salespersons in California?

12 A. No.

13 Q. You don't know, or they do not?

14 A. No. Any route sales representatives working
15 for Frito-Lay are under Rolling Frito-Lay. No other
16 entity.

17 Q. I will show you what we'll mark as the first
18 exhibit to your deposition and ask that you take a look
19 at that.

20     (Exhibit 1 was marked for identification.)

21 BY MS. FREELAND:

22 Q. Let me know when you've had an opportunity to
23 do so. It doesn't mean you have to read it word for
24 word. You certainly can if you would like to. But the
25 initial question will be if you have seen it before.

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 4 of 15   Page ID #:743

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1   Have you had an opportunity to review?
2   A.   Yes.
3   Q.   And if we do ask questions that require a
4   detailed review, please tell me that you would like to
5   review it.  You have that opportunity.
6   A.   Okay.
7   Q.   For the record, what we've marked as Exhibit 1
8   is a document entitled "Amended Notice of Person(s) Most
9   Knowledgeable."  And on page 2 it reflects this is for
10  the person most knowledgeable of defendant Rolling
11  Frito-Lay Sales, LP.
12          Ms. Sheeley, have you seen a copy of what we've
13  marked as Exhibit 1 before today's deposition?
14  A.   Yes.
15  Q.   Did you have an opportunity to review it at the
16  time that you saw it initially?
17  A.   Yes.
18  Q.   And do you understand that you are being
19  presented as the person most knowledgeable for some, if
20  not all, of the categories contained in Exhibit 1?
21  A.   Yes.
22  Q.   And to your knowledge, are there any categories
23  reflected in Exhibit 1, of Exhibit 1, which commences on
24  page 3, for which you are not being presented as the
25  person most knowledgeable?

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 5 of 15   Page ID #:744

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1  because we were not preparing specifically for those two
2  years or that it's changed over time, she will note that
3  in her response and we will address that later.
4          However, we explicitly wanted to state on the
5  record that we are not waiving our objection to the
6  limitations period beginning October 26th, 2007, which
7  is a legal objection based on the fact that the claims
8  prior to October 26th, 2007, were released as part of
9  the Charpentier lawsuit, and are therefore not properly
10 part of this lawsuit.  However, for convenience reasons,
11 we do not want Ms. Sheeley to return to California to
12 reiterate the same answers to the same questions for a
13 different time period.  So we're going to let her
14 testify to that time period notwithstanding our
15 objection.
16          MS. FREELAND:  Understood.  Thank you.
17          I will show you, Ms. Sheeley, what we'll mark
18 as Exhibit 3 to your deposition, and ask that you take a
19 look at this.  And this is the last one for which I
20 don't have a copy for you, and the rest I do.
21          (Exhibit 3 was marked for identification.)
22 BY MS. FREELAND:
23   Q.   And, Ms. Sheeley, if you wouldn't mind just
24 taking at look at that, and again, you don't have to
25 read it in detail.  But the first question would be, Do

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 6 of 15   Page ID
                                      #:745
Deposition of Karen Sheeley                         DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

```
 1  you recognize it?  Have you seen it before?
 2      A.   Are these the same?
 3      Q.   No.  What I would direct your attention to,
 4  just for purposes of efficiency, would be page 2.  This
 5  for the record is an amended notice of deposition of
 6  person(s) most knowledgeable.  This one is for defendant
 7  Frito-Lay, Inc.
 8      A.   Okay.
 9      Q.   Have you seen a copy of what we've marked as
10  Exhibit 3 prior to today's deposition?
11      A.   To be honest, I'm not sure.  It's possible.
12      Q.   Do you have an understanding that you are here
13  to testify as a person most knowledgeable with regard to
14  Frito-Lay, Inc., issues as they relate to California
15  route salespersons?
16      A.   I do.  However, there are no route sales
17  persons employed by Frito-Lay, Inc.  So nobody would
18  really -- I guess I'm as knowledgeable as anybody.
19  Since we don't have anybody, it doesn't apply.
20      Q.   To your knowledge, do the California route
21  salespersons employed by Rolling Frito-Lay perform any
22  services for Frito-Lay, Inc.?
23      A.   No, not to my knowledge.
24      Q.   And I've been referring to the route
25  salespeople as route salespersons.  You understand that
```

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 7 of 15   Page ID #:746

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1  to mean "route sales representatives"? It's early. Do
2  you understand that?
3       A.   Yes.
4       Q.   Thank you. And for purposes of even more
5  convenience, if we refer to them as "RSRs," would you
6  understand that that refers to route sales
7  representatives?
8       A.   Yes.
9       Q.   And for purposes of today's deposition, when we
10 refer to "RSRs," we are referring strictly to California
11 RSRs. Do you understand that?
12      A.   Yes.
13      Q.   That just provides us with shorthand.
14           Were there any issues -- and I will direct your
15 attention back to Exhibit 1, which was the amended
16 notice of deposition for the person most knowledgeable
17 for Rolling Frito-Lay Sales, were there any categories
18 other than the categories that were subject to the
19 objections by counsel for which you did not feel
20 qualified to testify as the person most knowledgeable?
21 And you can take your time to look at the categories.
22      A.   Thank you.
23      Q.   And for ease of reference, if you want to mark
24 them on yours, it may make it easier. The objections
25 were to Categories 16, 17, 18, 19, 23, 24, 25, 26, and

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 8 of 15   Page ID #:747

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1   27.

2        MS. HARDY: For clarification to your question,

3   if Ms. Sheeley has obtained additional information and

4   now feels qualified to testify as to those topics?

5        MS. FREELAND: That will be my next question.

6        THE WITNESS: Okay. So you have to read the

7   question back to me now. I couldn't remember if it's a

8   "yes" or "no" question.

9        MS. FREELAND: No problem. Would you mind

10  reading it back.

11       (Record was read.)

12       THE WITNESS: No.

13  BY MS. FREELAND:

14       Q. And other than Mr. Tunmire, was there anyone

15  else with whom you spoke to prepare for today's

16  deposition for the categories outlined in Exhibit 1?

17       A. No.

18       Q. Do you have an understanding of what the core

19  business of Rolling Frito-Lay Sales, LP, is?

20       MS. HARDY: Objection. Relevance and not a

21  designated topic, but the witness can answer if she

22  knows. Also vague as to "core business."

23       THE WITNESS: Right. It would be the

24  manufacture and sale of snack food products.

25  ////

Case 8:10-cv-00112-DOC -MLG   Document 47-1    Filed 03/28/11   Page 9 of 15   Page ID #:748

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1  MS. HARDY: Yes. Thank you.
2  MR. MESERVY: So stipulated then?
3  MS. HARDY: So stipulated.
4  BY MS. FREELAND:
5  Q. So directing your attention to Exhibit 1 of
6  Exhibit 1, Ms. Sheeley, there are categories listed.
7  And there is under No. 1 the category for which
8  Mr. De Stefan was seeking the person most knowledgeable.
9  That category identifies the compensation plans
10 applicable to all current and former employees of
11 Rolling Frito-Lay Sales, LP, in a California RSR
12 position. And then there's a definition within that
13 category of California RSR position.
14     Do you see that?
15 A. Yes.
16 Q. To your knowledge, does Rolling Frito-Lay Sales
17 consider Bulk 24 Lead RSRs to be route sales
18 representatives in California?
19 A. Yes.
20 Q. And as part of the Bulk 24 Lead RSR position,
21 do individuals in that position receive as part of their
22 compensation a commission?
23 A. Yes.
24 Q. Does Rolling Frito-Lay Sales consider Bulk 24
25 Swing RSR to be a route sales representative position?

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 10 of 15   Page ID #:749

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1  A. Yes.
2  Q. As part of the compensation for the individuals
3  who hold the title of Bulk 24 Swing RSR, do the
4  individuals receive a commission?
5  A. Yes.
6  Q. Does Rolling -- and for shorthand purposes, can
7  we refer to Rolling Frito-Lay Sales, LP, as "Rolling"?
8  Will you understand that?
9  A. Yes.
10 Q. Does Rolling consider Traditional Account RSR
11 to be a route sales representative position in
12 California?
13 A. Yes.
14 Q. And individuals holding the title of
15 Traditional Account RSR, do they receive as part of
16 their compensation a commission?
17 A. Yes.
18 Q. Does Rolling consider 5/2 Account Sales Lead
19 RSR to be a California route sales representative
20 position?
21 A. Yes.
22 Q. And do individuals who hold the title of 5/2
23 Account Sales Lead RSR, do they receive as a part of
24 their compensation a commission?
25 A. Yes.

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 11 of 15   Page ID #:750

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1   Q. Does Rolling consider 3-1 Account Sales Lead
2   RSR to be a California route sales representatives?
3   A. Yes.
4   Q. Do individuals in this 3-1 Account Sales Lead
5   RSR position receive as part of their compensation a
6   commission?
7   A. Yes.
8   Q. Does Rolling consider 3-1 Bulk 24 Lead RSR to
9   be a California route sales representative position?
10  A. Yes.
11  Q. Do individuals who hold the title of 3-1 Bulk
12  24 Lead RSR receive as part of their compensation a
13  commission?
14  A. Yes.
15  Q. Does Rolling consider TDD/Bulk Delivery Driver
16  Salaried to be a California route sales representative
17  position?
18  A. Not in the traditional sense.
19  Q. And what do you mean by that?
20  A. What I mean by that is this job title is
21  designed for a delivery person who delivers product from
22  a warehouse perhaps to a store. Although I believe that
23  for a very short period of time, we were using that job
24  code to describe a minimum amount of -- a minimum number
25  of RSRs. But it's not in use anymore. So it has been

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 12 of 15   Page ID #:751

Deposition of Karen Sheeley                              DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

1  used, but it's not standard, and it's not commissioned.

2  Q. During what period of time did you -- did

3  Rolling consider TDD/Bulk Delivery Drivers to be a route

4  sales representative position?

5  A. During no time did Rolling Frito-Lay consider

6  it to be a route sales position, but the job title was

7  used to identify a couple of employees. And to be

8  honest with you, I don't recall all the specifics, but I

9  will explain the situation as best I can.

10  Q. Okay.

11  A. There were a small number of route sales

12  representatives where they used this job title in their

13  personnel record, but that's not the intent of the job

14  title. So if you looked across all Frito-Lay Rolling

15  and saw this position, it would not refer to a route

16  sales representative. It was used as an exception for a

17  short period of time.

18  Q. At any time from November of 2005 to the

19  present, has the TDD/Bulk Delivery Driver Salaried been

20  in whole or in part a commissioned position?

21  A. No.

22  Q. Does Rolling consider Prepick Account Sales RSR

23  to be a California route sales representative?

24  A. Yes.

25  Q. And do individuals who hold the title of

Case 8:10-cv-00112-DOC -MLG   Document 47-1   Filed 03/28/11   Page 13 of 15   Page ID #:752

Deposition of Karen Sheeley                                   DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

```
 1    Prepick Account Sales RSR receive as part of their
 2    compensation a commission?
 3        A.    Yes.
 4        Q.    And for those with whom we have discussed
 5    previously that receive commission, have they received
 6    commission as part of their compensation from November
 7    of 2005 to the present?
 8        A.    Yes.
 9        Q.    Does Rolling deem TDD/Bulk Delivery Driver
10    Hourly to be a route sales representative position?
11        A.    No.  And I would say the same explanation as
12    the Bulk Delivery Driver Salaried.  The job title
13    primarily refers to an operations employee, but for a
14    period of time it was used to identify a very minimal
15    number of RSRs.  They were not commissioned.
16        Q.    At any time?
17        A.    No.
18        Q.    Does Rolling deem 3-1 Account Sales Swing RSR
19    to be a California route sales representative position?
20        A.    Yes.
21        Q.    And from November of 2005 to the present, have
22    individuals holding the title of 3-1 Account Sales Swing
23    RSR received as part of their compensation a commission?
24        A.    Yes.
25        Q.    Does Rolling consider 5/2 Account Sales Swing
```

Deposition of Karen Sheeley                                    DE STEFAN, et al. vs. FRITO-LAY, INC., et al.

```
 1   RSR to be California route sales representative
 2   positions?
 3        A.   Yes.
 4        Q.   And have individuals holding that title since
 5   November of 2005 through the present received as part of
 6   their compensation a commission?
 7        A.   Yes.
 8        Q.   Does Rolling consider 3-1 Combo Swing RSR to be
 9   a California route sales representative position?
10        A.   Yes.
11        Q.   And have individuals holding the title of 3-1
12   Combo Swing RSR from November 2005 through the present
13   received as part of their compensation a commission?
14        A.   Yes.
15        Q.   Does Rolling consider 5-2 Combo Swing RSR (UDS
16   & ACCT) to be a California route sales representative
17   position?
18        A.   Yes.
19        Q.   And have individuals who have held that title
20   at any time between November 2005 and the present
21   received as part of their compensation a commission?
22        A.   Yes.
23        Q.   Does Rolling consider Super Bulk Lead RSR to be
24   a California route sales representative position?
25        A.   Yes.
```

1    Q.    And have individuals who have held that
2  position at any time during November of 2005 to the
3  present received as part of their compensation a
4  commission?
5    A.    Yes.
6    Q.    Does Rolling consider Super Bulk Swing RSR to
7  be a California route sales representative position?
8    A.    Yes.
9    Q.    And have individuals who have held that title
10 during the time period of November 2005 through the
11 present received as part of their compensation a
12 commission?
13   A.    Yes.
14   Q.    Does Rolling consider VROT Eligible RSR to be a
15 California route sales representative position?
16   A.    Yes.
17   Q.    And have individuals holding the title of VROT
18 Eligible RSR at any time from November 2005 to the
19 present received as a part of their compensation a
20 commission?
21   A.    Yes.
22   Q.    Does Rolling consider VROT Eligible Prepick RSR
23 to be a California route sales representative position?
24   A.    Yes.
25   Q.    And have individuals holding the position of